Filed 9/4/20  P. v. Royal CA1/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FIRST APPELLATE DISTRICT

### DIVISION THREE

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA,<br><br>        Plaintiff and Respondent,<br>v.<br><br>MARTIN DEMMENT ROYAL,<br><br>        Defendant and Appellant. | A159921<br><br>(Napa County Super. Ct. No. CR114636) |

Martin Demment Royal (defendant) appeals from a post-judgment order denying his petition to be resentenced under Penal Code section 1170.91.[1]  Appellate counsel has filed a brief pursuant to *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*) and requests that we conduct an independent review of the record.  Counsel informed defendant of his right to file a supplemental brief, and defendant timely did so.  Having examined the entire record and considered defendant's contentions, we conclude there are no issues that require further briefing and affirm the order.

---

[1]    All further undesignated statutory references are to the Penal Code.

## FACTUAL AND PROCEDURAL BACKGROUND

### *Prior Opinion*

In 2004, a jury convicted defendant of over 40 felony counts including nine counts of rape (§ 261, subd. (a)(2)), nine counts of forcible oral copulation (§ 288a, subd. (c)), nine counts of penetration by a foreign object (§ 289, subd. (a)), nine counts of incest (§ 285), and nine counts of furnishing a controlled substance to a minor (Health & Saf. Code, § 11380, subd. (a)). The trial court sentenced defendant to 76 years in prison. We affirmed the judgment in *People v. Royal* (Aug. 15, 2006, A1092160 [nonpub. opn.]).

The facts underlying the charges are detailed in our prior opinion and we summarize them here. Defendant's daughter, M., lived with her mother and had little contact with defendant. When she was 12 years old, M. went to live with defendant and his wife. On her first night there, defendant and M. were alone when defendant reached under M.'s shirt and touched her breast, then " 'grabbed [her] face . . . and [] started french kissing [her].' " Defendant's molestation of M. continued; he would " 'always just come into [her] room' " after she showered and touch her breasts and vagina. When no one else was around, defendant would touch M. " 'all over' " and have sexual intercourse with her, which made M. feel " 'disgusted.' " At night, he would go to M.'s bed and ejaculate on her stomach. M. told defendant to stop " 'so many times' " but he never listened. When M. told defendant's wife what was happening, the wife " 'got mad and she said that she didn't think that he could have done something like that. . . .' " M. did not think the police would listen to her either. She not tell her mother what was going on as she was afraid her mother would be disappointed in her, and because she blamed herself " 'for allowing it to happen.' "

At some point, defendant told M. they had to move out because he and his wife were not getting along and M. would " 'never be accepted into the family' " because she was not his wife's child. In their new apartment, defendant slept in the same bed with M. and told her not to wear anything to bed. They had intercourse every day and also had oral and anal sex. M. did not go to school because defendant was " 'afraid that [she] would meet somebody else.' " When M. was 14 years old, defendant gave her marijuana for the first time, and they used it together more than once a week. Defendant also gave M. cocaine.

In 1998, defendant and M. moved to Napa. M. attended school for only a few days because defendant " 'was always saying that [she] would be looking at other boys, [and] other boys would be looking at [her].' " He did not allow visitors and made M. stay home and do all of the household chores. At some point, M. began working two jobs and defendant took all of her earned money. Defendant and M. " 'used a lot of drugs,' " particularly methamphetamine, which defendant would give to her. He also purchased pornographic movies, which he watched with M. " 'all the time.' " Defendant and M. had intercourse " '[t]oo many [times] to count,' " " '[e]very night and every day. Every morning.' " He also forced her to perform oral sex and anal sex. M. would sometimes bleed but he " 'just kept going until he was finished,' " and " 'one time he just laughed.' " M. never wanted " 'to be touched by him in this way' " but he would either ignore her or call her " 'daddy's little girl.' " M. felt she had no choice because no one listened to her and no one cared. Defendant was also violent. Once, he placed a lighter on M.'s bare leg and left a mark. He also pushed her frequently, threw a remote control at her, and on one occasion, when M. was in bed, he " 'picked up the

whole entire bed and just threw the bed over,' " causing M. to fall and injure her ribs.

In September 1999, M. finally told L.R.—who lived nearby and whose sister was married to defendant's father (M.'s grandfather)—what was going on. L.R. assured M. that she would "take care of this." That night, M.'s grandfather came over, confronted defendant, and took M. to stay at his house. It was decided that M. would go back to her mother's home. As M. packed to go to her mother's house, defendant took her into the back room and said " 'this would be the last time that [she gets] to see dad again.' " He had intercourse with M. and said he would " 'come back to get' her on her 18th birthday" and that M. would be his wife and " 'fit every need . . . that he had.' " Defendant told M. that "she was perfect for him" because " 'I was his daughter. He made me. He made me just the way he wanted me to be.' "

### Section 1170.91 Petition

On or about March 4, 2019, defendant filed a pro se petition for writ of habeas corpus seeking resentencing relief under section 1170.91, as amended by Assembly Bill No. 865 (Stats. 2018, ch. 523, § 1).

He filed the petition under the provision in section 1170.91 that provides: "A person currently serving a sentence for a felony conviction, whether by trial or plea, who is, or was, a member of the United States military and who may be suffering from sexual trauma, traumatic brain injury, post-traumatic stress disorder, substance abuse, or mental health problems as a result of his or her military service may petition for a recall of sentence, before the trial court that entered the judgment of conviction in his or her case, to request resentencing pursuant to subdivision (a) if the person meets both of the following conditions: [¶] (A) The circumstance of suffering from sexual trauma, traumatic brain injury, posttraumatic stress disorder,

4

substance abuse, or mental health problems as a result of the person's military service was not considered as a factor in mitigation at the time of sentencing. [¶] (B) The person was sentenced prior to January 1, 2015. This subdivision shall apply retroactively, whether or not the case was final as of January 1, 2015." (§ 1170.91, subd. (b)(1).) Defendant alleged he served in the military from 1984 to 1986 and suffered from substance abuse and post-traumatic stress disorder (PTSD) as a result of his service. In 1984, he requested, but was denied, permission to attend his grandfather's funeral on the basis that he had not accrued enough leave. He "went Absent Without Leave" when he decided to attend the funeral anyway. Thereafter, he "had no [h]ope of ever doing well in the Army," felt alone and afraid, and began drinking heavily. He left the military and used drugs to cope with his PTSD. The trial court referred the matter to the public defender for review.

The public defender then re-filed defendant's petition for writ of habeas corpus as a petition for resentencing under section 1170.91. The People filed an opposition. At a hearing on the petition, defendant testified he was sexually assaulted by two men in his military unit when he was about 21 years old. He did not mention the sexual assault in his original petition because he was too ashamed to divulge the incident to the person in prison who was assisting him in filling out his paperwork. As a result of his experiences in the military, defendant suffered from PTSD, although he has never been diagnosed with it.

After considering the pleadings and hearing defendant's testimony and the parties' arguments, the trial court denied the petition, stating, "As far as suitability is concerned, these [convictions] are horrendous." "And this is a situation where I think his PTSD that may have arisen from a sexual trauma when he was 21 years old somehow played a role in him victimizing a minor

5

child?  I just can't . . . draw that conclusion from his past.  PTSD from the military because he was denied a pass to attend his grandfather's funeral, which he did anyhow, I can't draw that conclusion."  "So the Motion is denied."  Defendant appeals.

## DISCUSSION

As noted, appellate counsel filed a *Wende* brief.  Thereafter, defendant filed a supplemental brief in which he argues:  (1) the record shows the trial court was biased against him; and (2) he made a sufficient showing that he qualifies for resentencing under section 1170.91.  Defendant has also submitted a letter to the court in which he requests that we appoint new counsel for him because his current appellate counsel failed to raise these "obvious" claims.

We have reviewed the entire record and have not discovered any arguable issues.  We have also considered the arguments defendant makes in his supplemental brief and conclude there are no issues that require further briefing.  Finally, we decline to appoint new counsel for defendant.  We are satisfied that counsel has fully complied with his responsibilities.  (*People v. Kelly* (2006) 40 Cal.4th 106, 109–110; *Wende*, *supra*, 25 Cal.3d at p. 441.)

## DISPOSITION

The trial court's order denying defendant's petition for resentencing is affirmed.

_____
Petrou, J.

WE CONCUR:


_____
Siggins, P.J.


_____
Jackson, J.

*People v. Royal/A159921*